**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 25-30124 |
| **KEVIN PATTERSON** | § | |
| **ADRIENNE PATTERSON** | § | Chapter 13 |
| | § | |
| Debtors. | § | |
| | § | |
| **WELLS FARGO BANK, NATIONAL** | § | |
| **ASSOCIATION, AS TRUSTEE FOR OPTION** | § | |
| **ONE MORTGAGE LOAN TRUST 2004-2,** | § | |
| **ASSET-BACKED CERTIFICATES, SERIES** | § | |
| **2004-2**, its successors and assigns | § | |
| | § | |
| Movant, | § | |
| | § | |
| vs. | § | |
| | § | |
| **KEVIN PATTERSON**, | § | |
| **ADRIENNE PATTERSON**, Debtors and | § | |
| **TIFFANY D CASTRO**, Trustee | § | |
| | § | |
| Respondents. | § | |

<u>**MOTION FOR IN REM RELIEF FROM STAY
AS TO 7614 THEISSWOOD RD, SPRING, TX 77379-4639**</u>

**THIS IS A MOTION FOR IN REM RELIEF FROM STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THIS MOTION GRANTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON FEBRUARY 27, 2025 AT 11:00AM IN COURTROOM 400 OF THE UNITED STATES BANKRUPTCY COURT, 515 RUSK, HOUSTON, TX 77002.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW **Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust 2004-2, Asset-Backed Certificates, Series 2004-2**, its successors and assigns (hereinafter "Movant"), a secured creditor and party in interest to the above-styled proceeding and files this Motion to for

in rem Relief from the Stay. In support of its Motion, Movant would respectfully state unto the Court as follows:

## I. JURISDICTION

1.       This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1334 and 11 U.S.C. §105, §362 and §1301;

2.       This is a core proceeding under 28 U.S.C. §157(b)(2)(G);

## II. FACTS

3.       On January 6, 2025, KEVIN PATTERSON and ADRIENNE PATTERSON (hereinafter "Debtors") filed a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code, thereby initiating the above-styled Bankruptcy Case. TIFFANY D CASTRO is the duly appointed and acting Trustee.

4.       On March 8, 2004, KEVIN PATTERSON executed a Note in the original principal amount of $148,000.00, payable to the order of Option One Mortgage Corporation (hereinafter "Note");

5.       Concurrently with the execution of the Note, KEVIN PATTERSON, and ADRIENNE PATTERSON, executed a Deed of Trust granting Movant a lien on certain real property to secure payment of the Note. The Deed of Trust was duly recorded in the HARRIS County Records and grants Movant a lien on the property commonly known as **7614 Theisswood Rd, Spring, TX 77379-4639** (hereinafter "Property") and legally described as follows:

> LOT FOURTEEN (14), IN BLOCK ONE (1), OF MEMORIAL NORTHWEST, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 166, PAGE 51 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

6.      Since the origination of the Deed of Trust, there have been FIVE previous Chapter 13 cases dismissed[1]. Three of those cases were dismissed within 365 days of filing the instant case:

a.      Bankruptcy Chapter 13, case number 24-30940 filed on 03/04/2024 by Kevin Patterson. The case was dismissed 05/16/2024 by Order of this Court for failure to file required documents;

b.      Bankruptcy Chapter 13, case number 24-33109 filed on 07/01/2024 by Kevin Patterson. The case was dismissed 08/19/2024 by Order of this Court for failure to file information;

c.      Bankruptcy Chapter 13, case number 24-34616 filed on 09/30/2024 by Kevin Patterson and Adrienne Patterson. The case was dismissed 11/18/2024 by Order of this Court for failure to file required information;

7.      The prior cases set forth in paragraph 6 were not dismissed pursuant to 11 U.S.C. §707(b) and the Debtors have not filed a motion to extend the stay;

8.      The loan is in default in the performance of the terms and conditions of said Note and Deed of Trust:

a.      As of 01/23/2025, the loan is contractually due for the 08/01/2017 payment and all amounts coming due since that date;

b.      Attached hereto as Exhibit A is a payment history including a statement of the total amount due to reinstate the loan as of 01/23/2025. Any payments received after this date may not be reflected in this default;

9.      The estimated fair market value of the Property per Debtors' schedules is approximately $317,456.00 and as of 01/23/2025, the estimated total debt was $375,764.93;

10.     To the best of Movant's knowledge, no non-exempt equity exists in the Property or any equity that does exist is so insubstantial as to be of little or no benefit or burdensome to the estate;

---

[1] Case# 18-34363 Filed by Kevin Patterson on 08/06/2018, Dismissed on 12/17/2019
Case# 21-32598 Filed by Kevin Patterson on 08/02/2021, Dismissed on 05/26/2022

11.     PHH Mortgage Corporation services the underlying mortgage loan and note for the property referenced in this Motion for Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust 2004-2, Asset-Backed Certificates, Series 2004-2 (the Noteholder) and is entitled to proceed accordingly. Should the stay be terminated or if this case is dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommended, said foreclosure action will be conducted in the name of Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust 2004-2, Asset-Backed Certificates, Series 2004-2 (the Noteholder). Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust 2004-2, Asset-Backed Certificates, Series 2004-2 (the Noteholder) has the right to foreclose because: Noteholder is the original mortgagee or beneficiary or assignee of the Security Document for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed;

### III.  IN REM RELIEF STAY

12.     Movant alleges cause exists to grant in rem relief pursuant to 11 U.S.C. §362(d)(4)(B) for the following reasons:

   a.    Debtors' history of serial filings, Debtors' failure to comply with the provisions of the Chapter 13 Plan in their previous filings and Debtors' failure to make post-petition mortgage payments evidences bad faith and an abuse of the provisions, purposes and spirit of the Bankruptcy Code [See, In re Kinney, 51 B.R. 840 (Bkrtcy.C.D.Cal. 1985), which held that debtors which filed multiple bankruptcy petition to utilize the automatic stay without the intent and ability to reorganize had acted in bad faith and abused the bankruptcy process];

   b.    That the filing of consecutive bankruptcy petitions where Debtors have failed to meet the requirements of prior Chapter 13 Plans forcing Movant to repeatedly cancel foreclosure sales is evidence that the instant filing was undertaken for an "improper purpose" without the actual ability to reorganize;

   c.    Debtors' history of serial filing, failure to comply with the provision of their

Chapter 13 plan in any of their filings and Debtor's failure to make post-petition mortgage payments and/or Chapter 13 plan payments, evidences that the filing of the instant bankruptcy petition is part of a scheme to delay, hinder and defraud Movant through multiple bankruptcy filings affecting the subject property and gives grounds for the Honorable Court to grant <u>in rem</u> relief pursuant to 11 U.S.C. §362(d)(4);

    d.    Debtors' history of serial filing has demonstrated a clear intent to continue to file bankruptcy petitions for the sole purpose of thwarting Movant's right to foreclose its security interest in the Property;

13.    It has been necessary for Movant to hire the law firm of Codilis & Moody, P.C. to collect the debt owed to it through this Court. Pursuant to the Note and Security Document, Movant is entitled to reimbursement of its reasonable attorney fees for their services;

14.    Movant requests that any Order entered, will be effective immediately upon entry and, Rule 4001(a)(3) is waived, and enforcement of such Order will not be stayed until the expiration of fourteen (14) days;

15.    Movant requests that upon entry of an Order for <u>in rem</u> Relief, it be exempt from further compliance with FRBP 3002.1 and Local Bankruptcy Rule 3002.2;

16.    Movant further requests that an Order for <u>in rem</u> Relief will remain in full force and effect if this bankruptcy case is converted to a different Chapter in the United States Bankruptcy Court;

17.    Movant certifies that prior to filing this motion an attempt was made to confer with the Debtors' counsel either by telephone, by e-mail or by facsimile, by the following person on the following date and time: **on 1/13/2025 at 4:22PM**. An agreement could not be reached. If requested by Debtors or Debtors' counsel, a payment history in the form attached to this motion was provided at least two days, excluding intermediate weekends and holidays) before this motion was filed;

WHEREFORE, PREMISES CONSIDERED, Movant prays that this Court enter an Order for <u>in rem</u> Relief thereby allowing Movant to exercise and enforce all its rights and remedies against the Debtors as a secured creditor and perfected lienholder to the Property; including, but not limited to, payment of bankruptcy attorney fees and costs, foreclosure and disposition of the Property, payment of costs, expenses, and reasonable attorney fees in accordance with the terms of the Note and Security Document, and for such other relief to which Movant may show itself justly entitled, either at law or in equity.

Respectfully submitted,

**Codilis & Moody, P.C.**

By: /s/Michael J. Kulak
Kerrie S. Mattson-Neal ARDC#6270224
Nicole Bartee SBOT#24001674
Marla A. Skeltis SBOT#24136182
Peter C. Bastianen ARDC#6244346
Michael J. Kulak IN Atty. #21347-53
20405 State Highway 249, Suite 170
Houston, TX 77070
Telephone: (281) 925-5200
Email: TX.bkpleadingsSOUTH@tx.cslegal.com
**ATTORNEYS FOR MOVANT**

Note: This law firm is a debt collector.

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a true and correct copy of the foregoing Motion <u>in rem</u> Relief, was served to the following parties by electronic notice and/or by deposit in the United States Mail, first class postage prepaid, on January 30, 2025.

Kevin Patterson
Adrienne Patterson
7614 Theisswood RD
Spring, TX 77379
**DEBTORS**

Thomas E. Bair
PO Box 752
Missouri City, TX 77459-0752
**ATTORNEY FOR DEBTOR**

Tiffany D Castro
1220 Augusta Drive Ste 500
Houston, TX 77057
**CHAPTER 13 TRUSTEE**

Office of the US Trustee
515 Rusk Ave, Ste 3516
Houston TX 77002
**U.S. TRUSTEE**

**ENTITY WITH INTEREST IN PROPERTY:**

**PARTIES REQUESTING NOTICE:**
PHH Mortgage Corporation
1 Mortgage Way
Mount Laurel, NJ 08054

Capital One Auto Finance, a division of Capital One, N.A.
Attn: Capital One Auto Finance, a division of Capital One, N.A.
AIS Portfolio Services, LLC
Account: XXXXXXXXX9854
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

                           Respectfully submitted,

                           **Codilis & Moody, P.C.**

                           By: <u>/s/ Michael J. Kulak</u>
                           Kerrie S. Mattson-Neal ARDC#6270224
                           Nicole Bartee SBOT#24001674
                           Marla A. Skeltis SBOT#24136182
                           Peter C. Bastianen ARDC#6244346
                           Michael J. Kulak IN Atty. #21347-53
                           20405 State Highway 249, Suite 170
                           Houston, TX 77070
                           Telephone: (281) 925-5200
                           Email: TX.bkpleadingsSOUTH@tx.cslegal.com
                           **ATTORNEYS FOR MOVANT**

                           Note: This law firm is a debt collector.

Loan Number: ▮▮▮▮▮▮   Servicing Number ▮▮▮▮▮▮   Date: 03/08/04

## HOME EQUITY ADJUSTABLE RATE NOTE
### (Non-Recourse)
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

March 08, 2004          Houston          ,          TX
[Date]                  [City]                        [State]

7614 THEISSWOOD RD, SPRING, TX 77379-4639
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.   $148,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
 Option One Mortgage Corporation, a California Corporation                      .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid.  Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of   6.850%   . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   May 01   ,  2004   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
April 01          ,  2034   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  Option One Mortgage Corporation
                        P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.   $969.78   . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) amounts payable under paragraph 2 of the Security Instrument (defined below); (ii) interest due under this Note; (iii) principal due under this Note; and (iv) late charges due under this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of   April   ,  2006   , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
          FOUR AND 65/100          percentage point(s) (   4.650%   )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**TEXAS EQUITY ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family**

Loan Number: ███████   Servicing Number ███████   Date: 03/08/04

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     9.850%     or less than   6.850%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than     12.850%     or less than     6.850%   .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.     BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**6.     LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.  **My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.**

**7.     BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     6.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may, except as otherwise required by applicable law, require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to Paragraph 12 herein, if more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together.

**10.     WAIVERS**

I and any other person who has obligations under this Note, except as otherwise required by applicable law, waive notice of intention to accelerate and the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. Nothing in this paragraph 10 shall be construed as a waiver of any right I may have relating to service and legal process, nor shall anything within this paragraph 10 be construed as an admission of liability, confession of judgment on other similar act on my part.

TXEQNT22 (05/22/98)

Loan Number: ▮▮▮▮    Servicing Number: ▮▮▮▮    Date: 03/08/2004

**11.   SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument subject to paragraph 12 herein. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.   NON-RECOURSE PROVISION**

Notwithstanding anything to the contrary contained herein or in the Deed of Trust securing this Note, there shall be no personal liability on the maker on this Note, or for the observance or performance of any covenants, conditions or agreements contained in the Deed of Trust securing this Note, and the payee herein and each subsequent holder of this Note will look solely to the property covered by the Deed of Trust and will not seek any money judgment, deficiency or otherwise against the maker hereof in the event of default in the payment of this Note or in the event of default under the terms of the Deed of Trust provided, however, that this paragraph 11 shall have no force and effect if it is determined by a court of competent jurisdiction that Borrowers, jointly or severally, obtained this credit through actual fraud.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)     _____(Seal)
KEVIN   PATTERSON            -Borrower                                    -Borrower

_____(Seal)     _____(Seal)
                            -Borrower                                    -Borrower

_____(Seal)     _____(Seal)
                            -Borrower                                    -Borrower

[Sign Original Only]

Page 3 of 3                                                          TXEQNT23 (05/22/98)

Loan Number: ▮▮▮▮▮▮▮        Servicing Number: ▮▮▮▮▮▮▮        Date: 03/08/04

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: KEVIN  PATTERSON
Loan #: ▮▮▮▮▮▮▮
Property Address: 7614  THEISSWOOD RD,  SPRING, TX 77379-4639
Loan Amount: $148,000.00

Note Date: 03/08/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

           Wells Fargo Bank Minnesota, N.A. as Trustee        Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
    Barbara Phillips

    Assistant Secretary

USD3050.wp (03-14-03)

**Loan#** 

## ALLONGE TO NOTE

**This endorsement is a permanent part of the Note in the amount of $148,000.00**

**NOTE DATE:  03/08/2004**

**BORROWER NAME:  KEVIN PATTERSON**

**PROPERTY:  7614 THEISSWOOD RD, SPRING, TX 77379-4639**

**PAY TO THE ORDER OF:**
**Wells Fargo Bank, National Association, as Trustee for Option One Mortgage Loan Trust**
**2004-2, Asset-Backed Certificates, Series 2004-2**

**WITHOUT RECOURSE:**
**WELLS FARGO BANK, N.A, SUCCESSOR BY MERGER TO WELLS FARGO BANK**
**MINNESOTA, N.A., AS TRUSTEE**

**Signer:**
**Title:**      David Diaz
              **Vice President**



Ocwen Loan Servicing, LLC
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

We are here to help you!
Call toll-free (800) 746-2936
Mon - Fri 8:00am – 9:00pm, Sat 8:00am –5:00pm
Sun 9:00am - 9:00pm ET

## LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 1/16/2015, which modifies the terms of your home loan obligations as described in detail below:

A.  the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Harris County, and

B.  the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 7614 Theisswood Rd. Spring, TX 77379.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.  You agree that the new principal balance due under your modified Note and the Mortgage will be $263,999.15. Upon modification, your Note will become contractually current; however fees and charges that were not included in this principal balance will be your responsibility.

2.  You promise to make an initial payment in the amount of $1,944.10 on or before 3/1/2015, after which you will commence payments of principal and interest in the amount of $1,387.74 beginning on 4/1/2015 and continuing on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full. The maturity date of your Mortgage will be 4/1/2034.

3.  You will be required to pay to Ocwen, until such time the loan is paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Ocwen as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Ocwen specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to you.

4.  Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be 2.00001% .This rate will remain in effect until the maturity date of your loan.

5.  If you sell your property, refinance or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

6.  You understand and agree that:

    (a)  All the rights and remedies, stipulations and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations and conditions in your Note and Mortgage will remain in full force and effect, Except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be Diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

STRTM

This communication is from a debt collector attempting to collect a debt, any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



**Ocwen Loan Servicing, LLC**
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

**We are here to help you!**
**Call toll-free (800) 746-2936**
Mon - Fri 8:00am – 9:00pm, Sat 8:00am –5:00pm
Sun 9:00am – 9:00pm ET

(c)    Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement

(d)    Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

(e)    You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

(f)    You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

(g)    Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

_____

Ocwen Loan Servicing, LLC

By:_____
Authorized Officer

**Jacob Rodriguez**

_____

Kevin Patterson

_____

**MAR 2 0 2015**

STRTM

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

FILED BY
FIDELITY NATIONAL TITLE

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT


**ORIGINAL**

X471832
03/19/04  100436207        $37.00

[Space Above This Line For Recording Data]

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**THE EXTENSION OF CREDIT SECURED BY THE LIEN GRANTED HEREIN IS THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION**

THIS DEED OF TRUST ("Security Instrument") is made on March 08, 2004 .
The grantor is
KEVIN PATTERSON AND ADRIENNE PATTERSON


("Borrower"). The trustee is James L. Robertson                   , whose address is
10333 Richmond Ave., Ste. 550, Houston, Texas 77042                    ("Trustee").
The beneficiary is  Option One Mortgage Corporation, a California
                                    Corporation
which is organized and existing under the laws of    California        , and whose address is
3 Ada, Irvine, CA  92618                                    ("Lender").
Lender has advanced to Borrower the principal sum of
    ONE HUNDRED FORTY EIGHT THOUSAND
              ...AND NO/100THs      Dollars (U.S.  $148,000.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  April 01, 2034        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in
         Hardeman                                              County, Texas:
102-547-000-0014-001


LOT FOURTEEN (14), IN BLOCK ONE (1), OF MEMORIAL NORTHWEST, SECTION ONE
(1),  A SUBDIVISION IN HARRIS COUNTY,TEXAS, ACCORDING TO THE MAP OR PLAT
THEREOF RECORDED IN VOLUME 166, PAGE 51 OF THE MAP RECORDS OF HARRIS
COUNTY,TEXAS.


which has the address of    7614  THEISSWOOD RD,  SPRING

Texas        77379-4639        ("Property Address");                    [Street, City],
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

**TEXAS EQUITY-Single Family**
Page 1 of 8                                                    TXEQD011.wp (01-09-04)

Date: 03/08/04

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to amounts payable under paragraph 2; second, to interest due; third, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

TXEQD012.wp (01-09-04)

Date: 03/08/04

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower warrants and represents that he/she shall either (1) occupy and establish and use the property as the Borrower's principal residence or (2) shall be the only occupant of the property. In the event the Borrower ceases to either maintain the property as the primary residence or the Borrower ceases to occupy the residence (irrespective of whether the property is maintained as the primary residence) Borrower shall be subject to all of the remedies set forth in the Occupancy Rider attached hereto. The remedies for the Occupancy Rider shall be in addition to the remedies set forth herein.

Borrower shall not destroy, damage or impair the Property, allow the property to deteriorate, or commit waste on the property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender or Trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and

TXEQD013.wp (01-09-04)

Date: 03/08/04

agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor, in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest to the extent Borrower may be bound under the terms and conditions of the Note. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall

TXEQD014.wp (01-09-04)

Date: 03/08/04

be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument other than service of process as may be required by paragraph 21 herein shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given and acknowledges receiving one conformed copy of the Note, this Security Instrument and all other Instruments signed by Borrower.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument subject to the terms and conditions of the Note. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its

Date: 03/08/04

directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), and amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

**22. Power of sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of the Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty form Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

Date:03/08/04

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law. Nothing within this Security Instrument shall be deemed to authorize the Trustee or substitute trustee herein to act on behalf of the Borrower in any judicial proceeding, or to confess judgement on behalf of Borrower, the trustee's duties, obligations and Rights hereunder being strictly limited to those as may be described in the Texas Civil Practices and Remedies Code, the Texas Rules of Civil Procedure and the Texas Property Code.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Waiver of Notice of Intention to Accelerate.** Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

**28. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable. Lender may then pursue the remedies available to it including those set forth in paragraph 21 herein.

**29. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**30. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**31. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**32. Reimbursement.** To the extent permitted by applicable law and consistent with the Note, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

**33. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**34. Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in

Date: 03/08/04

favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**35. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**36. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider     [X] Planned Unit Development Rider     [X] Occupancy Rider
[ ] Other(s) (specify)

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____(Seal)
KEVIN PATTERSON    -Borrower

_____(Seal)
ADRIENNE PATTERSON    -Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

STATE OF TEXAS, _____ County ss:

    BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared KEVIN PATTERSON AND ADRIENNE PATTERSON, known to me to be the person(s) whose name(s) _____ ary _____ subscribed to the foregoing instrument, and acknowledged to me that _____ the _____ executed the same for the purposes and consideration therein expressed.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE, this 8 day of March 2004

_____
Notary Public

Date:   03/08/04

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made     March 08, 2004          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

7614  THEISSWOOD RD,  SPRING, TX 77379-4639

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as

MEMORIAL NORTHWEST

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i)  Lender waives the provision in Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

MULTISTATE PUD RIDER–Single Family–FNMA/FHLMC UNIFORM INSTRUMENT–Form 3150 09/90

Page 1 of 2                                                                                                    USRI0111 (01-10-97)

Date:   03/08/04

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Covenant 10.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)   the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)   any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association;

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____
Borrower  KEVIN  PATTERSON

_____
Borrower  ADRIENNE  PATTERSON

_____
Borrower

_____
Borrower

**MULTISTATE PUD RIDER--Single Family--FNMA/FHLMC UNIFORM INSTRUMENT--Form 3150 09/90**

USRI0112 (01-10-97)

Date:  03/08/04

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made March 08, 2004                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
              Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

                7614  THEISSWOOD RD,  SPRING, TX 77379-4639

                          [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of          6.850%                    . The
Note provides for changes in the interest rate and the monthly payments, as follows:

**4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of    April 01       2006          ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
     FOUR AND 65/100                     percentage point(s) ( 4.650%      )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                              USRI0021 (02-23-99)

Date:  03/08/04

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.850%  or less than  6.850% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 12.850%  or less than  6.850% .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Date: 03/08/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
KEVIN    PATTERSON

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)
ADRIENNE    PATTERSON

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3                                                        USRI0023 (02-23-99)

Date:  03/08/04

# OCCUPANCY RIDER
## PRIMARY RESIDENCE - TEXAS

THIS OCCUPANCY RIDER is made          March 08, 2004          , and is incorporated into and amends and supplements the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note to

Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at

7614   THEISSWOOD RD,   SPRING, TX 77379-4639
(Property Address)

## OCCUPANCY AGREEMENTS
In addition to the covenants and agreements made in the Security Instrument, Borrower further covenants and agrees as follows:

1. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary residence. Lender makes non-owner residence loans on different terms.

2. The Borrower desires Lender to make this loan to Borrower.

3. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary residence and that Borrower will so occupy, and continue to occupy, this property as its sole primary residence commencing upon the execution of this Security Instrument.

4. If Borrower breaches this promise to occupy the property as Borrower's primary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument:
   A. Declare all sums secured by the Security Instrument due and payable and exercise the Power of Sale;
   B. Decrease the term of the loan and adjust the monthly payments under the Note accordingly;
   C. Increase the interest rate and adjust the monthly payments under the Note accordingly;
   D. Require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

## CONFLICTING PROVISIONS
Borrower agrees that if the provisions of this Rider conflict with the printed terms in the Security Instrument and/or the Note, then the provisions of this Rider will control.

## TERMINATION OF AGREEMENT
If the Security Instrument is assigned to another lender, this Rider may, at the option of the assignee, be terminated.

Date:   03/08/04

IN WITNESS WHEREOF, Borrower has executed this Occupancy Rider.

_____
KEVIN    PATTERSON

_____
ADRIENNE    PATTERSON

_____

_____

State of ___TEXAS___ March 8, 2004. County of ___HARRIS___ }SS:
On _____ before me, the undersigned, a Notary Public in and for said State, personally appeared KEVIN  PATTERSON  AND  ADRIENNE  PATTERSON personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.        Signature _____
(Reserved for official seal)

*(notary seal:* MICHELLE N. HULSE, NOTARY PUBLIC, STATE OF TEXAS, 03-06-2007 *)*

Name (typed or printed) _____

My commission expires: _____

**FILE FOR RECORD**
**8:00 AM**

**MAR 1 9 2004**

*Beverly B. Kaufman*
**County Clerk, Harris County, Texas**

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

**MAR 1 9 2004**



*Beverly B. Kaufman*
**COUNTY CLERK**
**HARRIS COUNTY, TEXAS**

**RECORDER'S MEMORANDUM**

ALL BLACKOUTS, ADDITIONS AND CHANGES WERE PRESENT AT THE TIME THE INSTRUMENT WAS FILED AND RECORDED.

**TEXAS OCCUPANCY RIDER-Primary Residence**
Page 2 of 2

TXRI0012 (02-02-98)

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

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57076
IRVINE, CA 92619-7076

ATTN:   QUALITY CONTROL

FILED BY
FIDELITY NATIONAL TITLE

X471834
03/19/04  100436208        $13.00

[Space Above This Line For Recording Data]

# TEXAS EQUITY LOAN AFFIDAVIT

BORROWER(S): KEVIN   PATTERSON

**FILE FOR RECORD**
**8:00 AM**

**MAR 1 9 2004**

*Beverly B. Kaufman*
County Clerk, Harris County, Texas

PROPERTY: 7614   THEISSWOOD RD,   SPRING, TX  77379-4639

Before me, the undersigned authority, appeared the Affiants (whether one or more), who being me duly sworn, on his/her/their oaths stated the following to be true, correct and complete in connection to the Affiants' application for a Texas Equity Loan mortgage, made to Option One Mortgage Corporation, a California Corporation (hereafter the "Lender") and made pursuant to §50(a)(6), Article 16, of the Texas Constitution:

1.   The Affiants own the title to the land described in Exhibit "A" attached hereto and made a part hereof (hereafter the "Land").

2.   All of the Land is the homestead of the Affiants and no part is not the homestead of the Affiants.

3.   No additional collateral has been asked for, or given, as security for the loan.

4.   The Land is not designated for the current year for agricultural, open space, or timber land use as provided by statutes governing property tax and will not be so designated during the term of the loan by the Lender.

5.   All homeowner's association assessments relating to the Land, if any, have been paid through the current year.

6.   The Affiants do not have or claim any other property, other than the Land, as their homestead and do not claim a homestead tax exemption against any other property.  The Affiants do not have or claim a business homestead and do not own any land that is used as the business or occupation of the Affiants.

7.   The Affiants do not have a pending Bankruptcy.

8.   The Affiants do not have any outstanding extensions of credit made pursuant to §50(a)(6), Article 16, of the Texas Constitution on any land, excepting the Land described in item 1. above if that extension of credit is to be paid in full and released by the current lienholder.  The Affiants have not executed any mortgage loan documents relative to any extensions of credit made pursuant to §50(a)(6), Article 16, of the Texas Constitution on the Land, or on any other land, within the last year (365 days).

9.   The Lender has not provided any tax advice to the Affiants.

10.  The Affiants acknowledge that the Lender is relying on this written representation by the Affiants as to the Land.

11.  The HUD-1 Settlement Statement signed by the Affiants correctly reflects all fees paid by the Affiants in connection with this extension of credit made pursuant to §50(a)(6), Article 16, of the Texas Constitution.

12.  The Affiants' marital status is correctly reflected by the recitals as to marital status in the Texas Equity Loan Deed of Trust executed by the Affiants.

13.  The Affiants have been provided with a copy of all documents signed by the Affiants.

TXEQMS61 (06/08/99)

Date:  03/08/04

14. None of the documents signed by the Affiants contained blanks when signed.

15. The principal loan amount for this Texas Equity Loan mortgage, when added to the principal balances of all other liens against the Affiants homestead, does not exceed 80% of the fair market value on the date that this extension of credit is made. The Lender and the Affiants have signed a written acknowledgement as to the fair market value on the date that this extension of credit is made.

16. The Affiants acknowledge that this loan has closed at the offices of the Lender, or a title company, or an attorney at law.

17. There are no unpaid ad valorem taxes, standby fees, or assessments by any taxing authority for prior years relating to the Land. There are no unpaid judgement liens, or federal or state liens, or bills for labor, material or services for improvements or repairs to the land, owed by or claimed against the Affiants. The Affiants have not entered into any outstanding contracts for repairs or improvements to the land, and the Affiants have not begun any repairs or improvements to the land which are to be paid for with the proceeds of this Texas Equity Loan mortgage.

18. The Affiants acknowledge that all discussions between themselves and the Lender have primarily been in the English language.

19. The Affiants acknowledge that this extension of credit is made pursuant to §50(a)(6), Article 16, of the Texas Constitution and is not an open-end account that may be debited from time to time or under which credit may be extended from time to time. The Affiants further acknowledge that the Affiants have entered into this extension of credit voluntarily with the express written consent of each owner of the Land, and each owner's spouse.

20. The Affiants acknowledge that at least 12 days have passed since the date of the Affiants submission of a loan application to the Lender, or since the date of the Affiants receipt of the Lender's written notice titled Notice Concerning Extensions of Credit, whichever date occurred later.

The undersigned Affiants hereby swear under oath that the above statements are true and correct. We understand that this Texas Home Equity Affidavit is part of the loan documentation.

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS AFFIDAVIT. ALL BORROWERS ON THE NOTE, ALL OWNERS OF THE PROPERTY, AND ALL SPOUSES OF THE OWNERS MUST SIGN THIS AFFIDAVIT. AFTER YOU SIGN, MAKE SURE YOU RECEIVE A COPY OF THIS AFFIDAVIT.

Borrower KEVIN  PATTERSON

Borrower

Borrower

Borrower ADRIENNE  PATTERSON

Borrower

Borrower

_____ [Space Below This Line For Acknowledgment] _____

STATE OF  TEXAS

COUNTY OF  HARRIS  }SS

On  March 8, 2004

_____ before me, the undersigned, a Notary Public

in and for said State, personally appeared _____

KEVIN PATTERSON  AND  ADRIENNE PATTERSON

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal Signature _____
(Reserved for official seal)

Name (typed or printed) _____

My commission expires: _____

TXEQMS62 (06/08/99)

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

# Exhibit 'A'

102-547-000-0014-001

LOT FOURTEEN (14), IN BLOCK ONE (1), OF MEMORIAL NORTHWEST, SECTION ONE
(1),  A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT
THEREOF RECORDED IN VOLUME 166, PAGE 51 OF THE MAP RECORDS OF HARRIS
COUNTY, TEXAS.

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

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris
County, Texas on

MAR 19 2004



*Beverly L. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

20070331835
06/01/2007  RP1   $20.00

# ASSIGNMENT OF NOTE AND TRANSFER OF LIENS
## (Option One to Wells Fargo)

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

THAT OPTION ONE MORTGAGE CORPORATION, the present legal owner and holder of the Note ("Assignor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) together with other good and valuable consideration to Assignor paid by WELLS FARGO BANK, N. A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2004-2, ASSET-BACKED CERTIFICATES, SERIES 2004-2 ("Assignee"), the receipt of which is hereby acknowledged, has SOLD, ASSIGNED, TRANSFERRED and CONVEYED, and by these presents does SELL, ASSIGN, TRANSFER and CONVEY unto Assignee the following described indebtedness, together with all liens held by Assignor securing its payment:



That certain Note ("Note") dated March 8, 2004, in the original principal sum of One Hundred Forty-eight Thousand and No/100 Dollars ($148,000.00), executed by KEVIN PATTERSON and ADRIENNE PATTERSON, payable to the order of Assignor, as secured by that certain Texas Deed of Trust, dated of even date, recorded under File No. X471832, of the Official Real Property Records of Harris County, Texas, being LOT FOURTEEN (14) IN BLOCK ONE (1), OF MEMORIAL NORTHWEST, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNT7Y, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 166, PAGE 51 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS, and more particularly described as 7614 Theisswood Road, Spring, Texas  77379-4639 ( Property").

Assignor also hereby SELLS, ASSIGNS, TRANSFERS and CONVEYS unto Assignee all the right, title and interest owned or held by Assignor in the Property by virtue of being the owner and holder of the indebtedness herein assigned and conveyed.

TO HAVE AND TO HOLD unto Assignee, its successors and assigns, the indebtedness evidenced by the Note hereby assigned, together with all and singular the liens, rights, equities, title and interest in the Property, including the superior title, and all improvements thereon which Assignor has by virtue of being the legal owner and holder of the indebtedness evidenced by the Note.

Assignor hereby covenants that all legal payments, offsets and credits to which the indebtedness evidenced by the Note is entitled have been heretofore allowed, and hereby authorizes Assignee to release, by duly executed release, the lien or liens hereby assigned upon payment of said indebtedness.

This transfer and assignment is without recourse or warranty, express or implied upon or by Assignor.

Dated this _24_ day of _MAY_, 2007.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in file number Sequence on the date and at time
stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris
County Texas on

**JUN - 1 2007**

_Beverly B. Kaufman_
COUNTY CLERK
HARRIS COUNTY, TEXAS

OPTION ONE MORTGAGE CORPORATION

By: _____
Name: Rick Wilken
Title: Assistant Secretary

THE STATE OF MINNESOTA    §
                          §
COUNTY OF DAKOTA          §

This instrument was acknowledged before me on _24_ day of _MAY_, 2007, by
Rick Wilken, Assistant Secretary on behalf of OPTION ONE MORTGAGE
CORPORATION, known to me to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that he executed same for the purposes and consideration
therein expressed.



JACQUELYN FREEMAN
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2011

Notary Public, State of Minnesota
My Commission Expires: 1-31-11

Address of Grantee
3 Ada
Irvine, CA  92618

AFTER RECORDING RETURN TO:
Carolyn A. Taylor
Hughes, Watters & Askanase, L.L.P.
Three Allen Center
333 Clay Street, 29th Floor
Houston, Texas 77002

FILED FOR RECORD
8:00 AM

**JUN - 1 2007**

_Beverly B. Kaufman_
County Clerk, Harris County, Texas



20100035450
01/28/2010   ER   $24.00

**ASSGN**
**N**

## ASSIGNMENT OF NOTE AND TRANSFER OF LIENS

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |



THAT WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2004-2, ASSET BACKED CERTIFICATES, SERIES 2004-2 , the present legal owner and holder of the Note ("Assignor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) together with other good and valuable consideration to Assignor paid by WELLS FARGO BANK, N. A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2004-2, ASSET-BACKED CERTIFICATES, SERIES 2004-2, BY ITS SERVICER-IN-FACT, AMERICAN HOME MORTGAGE SERVICING, INC.   ("Assignee"), the receipt of which is hereby acknowledged, has SOLD, ASSIGNED, TRANSFERRED and CONVEYED, and by these presents does SELL, ASSIGN, TRANSFER and CONVEY unto Assignee the following described indebtedness, together with all liens held by Assignor securing its payment:

That certain Note ("Note") dated March 08, 2004, in the original principal sum of ONE HUNDRED FORTY EIGHT THOUSAND AND 00/100 Dollars ($148,000.00), executed by KEVIN PATTERSON and ADRIENNE PATTERSON, payable to the order of Assignor, as secured by that certain Texas Home Equity Deed of Trust, dated of even date, recorded under File No. X471832, in the Official Real Property Records of Harris County, Texas, covering that certain real property described as LOT FOURTEEN (14) IN BLOCK ONE (1), OF MEMORIAL NORTHWEST, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 166, PAGE 51 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS, and more commonly known as 7614 Theisswood Road, Spring, Texas 77379-4639 ("Property").

Assignor also hereby SELLS, ASSIGNS, TRANSFERS and CONVEYS unto Assignee all the right, title and interest owned or held by Assignor in the Property by virtue of being the owner and holder of the indebtedness herein assigned and conveyed.

TO HAVE AND TO HOLD unto Assignee, its successors and assigns, the indebtedness evidenced by the Note hereby assigned, together with all and singular the liens, rights, equities, title and interest in the Property, including the superior title, and all improvements thereon which Assignor has by virtue of being the legal owner and holder of the indebtedness evidenced by the Note.

Assignor hereby covenants that all legal payments, offsets and credits to which the indebtedness evidenced by the Note is entitled have been heretofore allowed, and hereby authorizes Assignee to release, by duly executed release, the lien or liens hereby assigned upon payment of said indebtedness.

███████ m/0702

This transfer and assignment is without recourse or warranty, express or implied upon or by Assignor.

Effective as of November 19, 2009.

Dated this 26th day of Jan, 2010.

WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2004-2, ASSET BACKED CERTIFICATES, SERIES 2004-2

2OR

By: _____
Name:        Kathy Smith
Title:
            Assistant Secretary

THE STATE OF    **Florida**            §
                                       §
COUNTY OF       **Duval**              §

This instrument was acknowledged before me on 26th day of Jan, 2010, by Kathy Smith    Assistant Secretary on behalf of WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2004-2, ASSET BACKED CERTIFICATES, SERIES 2004-2 , known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed same for the purposes and consideration therein expressed.

Patricia B. McCormack
Notary Public, State of Florida
My Commission Expires: 11-27-13



PATRICIA B. MCCORMACK
MY COMMISSION # DO 938181
EXPIRES: November 27, 2013
Bonded Thru Budget Notary Services

Fahm/0702

ER 015 - 48 - 0589

Address of Grantee ("Assignee")
3 Ada
Irvine, California 92618


AFTER RECORDING RETURN TO:
Carolyn A. Taylor
Hughes, Watters & Askanase, L.L.P.
Three Allen Center
333 Clay Street, 29th Floor
Houston, Texas 77002

ER 015 - 48 - 0590

ım/0702

ER 015 - 48 - 0591

20100035450
# Pages 4
01/28/2010   14:30:39 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
BEVERLY KAUFMAN
COUNTY CLERK
Fees 24.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS